The ERIE ENDOWMENT, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 756-Erie.

United States District Court
W. D. Pennsylvania.

Dec. 21, 1961.

Enoch C. Filer, Walter Dart, Erie, Pa., for plaintiff.

Leonard Goldberg, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

WILLSON, District Judge.

This civil action was tried non-jury at Erie. The evidence introduced consisted of the pleadings and various exhibits and the stipulations of counsel, all as shown in the trial record. One witness,

Enoch C. Filer, one of plaintiff's trustees, testified for the plaintiff and one Stephen F. Billisits, an Internal Revenue Agent, testified for the government. There is no substantial dispute in the evidence which plaintiff has summarized in its brief and which the court adopts. The following is a brief statement of the facts.

The Erie Endowment is a Pennsylvania non-profit corporation, incorporated June 1, 1949, for the purpose of carrying out the intents and purposes of an inter-vivos trust established by E. H. Mack dated December 10, 1935.

The purposes of the inter-vivos trust was to use "the net amount of income of which is to be used for the advancement of the Christian religion, for the promotion of science and arts, and the education, welfare and social development and betterment, both materially and spiritually of the people, more especially of, but not restricted to, the City and County of Erie, Pennsylvania, regardless of race, sex, color or creed".

The inter-vivos trust also provides that the Trustees shall accumulate the net amount of income resources and profits as follows:

"Ninety (90%) per cent of the said amount shall be retained during the first five (5) years; Eighty (80%) per cent of said net amount shall be retained the second five (5) years; Seventy (70%) per cent of said net amount shall be retained during the succeeding ten (10) years; and Fifty (50%) per cent of said net amount shall be retained the succeeding ten (10) years; not less than Ten (10%) per cent of said amount shall be retained thereafter by the said Trustees and added to the corpus of this trust estate until the total aggregate of such additions with the corpus of the trust shall be as much as Ten Million Dollars."

On or about July 14, 1953, the Erie Endowment filed its application for exemption from taxation under the provisions of Section 101(6) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 101

(6). Through delay, postponements (not here important), the request was not clearly answered until some years later. In the meantime, plaintiff filed a dual request with the Treasury Department asking that the Erie Endowment be granted exemption as either a charitable organization under Section 501(c) (3) I.R.C., 26 U.S.C.A. § 501(c) (3) or as a social welfare organization under Section 501(c) (4). The resulting ruling held that the plaintiff was not such as described in Section 501(c) (4) and that it was such as described in Section 501(c) (3), but denying exemption for violation of the accumulation provision of Section 504, 26 U.S.C.A. § 504.

The Erie Endowment filed its income tax return for the year 1958 and paid its tax, in the total amount of $2,992.93, and filed a claim for refund which was denied December 5, 1960. This suit was then filed.

## QUESTIONS PRESENTED

The defendant, in its brief, presents two questions for decision. They are:

"1. Is the taxpayer's program for an accumulation of income pursuant to the provisions of its charter in the amount of 90 per cent for the first five years of the program, 80 per cent the second five years, 70 per (cent) for the next ten years and 50 per cent for the succeeding ten years and not less than 10 per cent thereafter until the total aggregate of additions and corpus shall be equal to $10,000,000, an unreasonable accumulation within the meaning of Section 504 of the Internal Revenue Code of 1953 [1954], where there are no specific projects or objectives for which the income is accumulated?

"2. If the answer to the foregoing question is that the accumulation was unreasonable, then the question presented is whether the taxpayer can avoid the prohibition against unreasonable accumulation, applicable to nonprofit organizations organized and operated for charitable, etc. purposes, by the assertion that it is a civic organization operated exclusively for the promotion of social welfare

within the meaning of Section 501(c) (4) of the Internal Revenue Code of 1954."

The plaintiff, in its statement of the questions involved contends that the Erie Endowment should be held to be exempt under the provisions of Section 501(c) (4). It says also that the court should hold that the plaintiff is organized and operated exclusively for charitable purposes as described in Section 501(c) (3). It finally contends that the accumulation out of the income during the year 1958 or any prior taxable year and not actually paid out by the end of the year are not unreasonable in amount and duration.

## DISCUSSION

It is to be noticed that the trust was originally established by an indenture dated December 10, 1935, between E. H. Mack as donor and William E. Hirt, Enoch C. Filer and E. H. Mack as Trustees. The trust purposes are general in nature and character but certainly may be designated as charitable. As stated in the indenture, "Broad powers are intended" and were given to the Trustees. Government Exhibit 3 shows income from 1936 to 1958 in the sum of $504,200.94; contributions made by the Trustees during the same period were $114,669.20; and the income accumulated during the same period was $389,531.64. The trust was incorporated June 1, 1949. From that date until the end of 1958 the net income was $314,494.98; charitable contributions of $93,314.20 were paid and the income accumulations amounted to $221,180.78. It is well to note that during the period of its existence both as a trust and as a corporation, taxpayer's sole purpose has been to contribute money to other charities. It never initiated, promoted or operated any charitable program or function. The sole donor of the taxpayer was E. H. Mack, the founder and Trustee, until his death.

■ I—The first question presented by the government in its brief must be answered in the affirmative. The court holds that the taxpayer program for accumulation of income as directed in its charter and as actually accumulated by the Trustees is an unreasonable accumulation within the meaning of Section 504 of the Internal Revenue Code of 1954. This must be the finding because there are no specific projects or objectives for which the income was accumulated. The court agrees with the analysis of this section on accumulations as made by Judge Wortendyke in Samuel Friedland Foundation v. United States, 144 F.Supp. 74, (D.C.N.J., 1956). In the cited case as in the instant case the facts were undisputed and both parties were relying upon contentions as to the interpretation and application of the pertinent statutory provisions. In the Samuel Friedland case the evidence showed that it had a specific purpose to accumulate funds to be donated for the construction of a medical research center and that it appeared that the sum would be accumulated in approximately eight years. Judge Wortendyke held as a test, "Does the charitable organization have a concrete program for the accumulation of income which will be devoted to a charitable purpose and in the light of existing circumstances is the program a reasonable one?" Judge Wortendyke held that based upon the facts before him, the amounts accumulated were not unreasonable because of a specific program, that is the construction of a medical research center. He gave consideration to the funds available initially, the purpose of the accumulation and the dollar goal, as well as the duration of time required to reach the dollar goal. In the Erie Endowment case it appears that the objectives are in the first instance of a general nature and character. The court is well acquainted with and has a great respect for the integrity and ability of the Honorable William E. Hirt and Enoch C. Filer, Esq., as Trustees. It is apparent, however, from this record that they have devoted themselves to carrying out the intentions of the founder, many of which were transmitted to them orally by the founder during his lifetime. The principle and main purpose of the trust in the first instance, how-

ever, must be held to be the accumulation of $10,000,000.00. When that goal is reached, then something worthwhile can be undertaken. As indicated, it is apparent that the purposes and objectives of the trust in the first instance were and continue to be laudable, but under the circumstances the substantial income cannot be held to be exempt from taxation. The first question therefore is answered in the affirmative.

■ ■ II—Having held that the taxpayer has unreasonably accumulated income within the meaning of Section 504, the question still for decision is whether the taxpayer is entitled to exemption under Section 501 as an organization described in Section 501(c)(4) of the Internal Revenue Code. The government contends that in order to qualify for exemption under Section 501 as an organization described in Section 501(c)(4), the taxpayer must prove (1) that it is a civic organization, (2) that it is not organized for profit, and (3) that it is operated exclusively for the promotion of social welfare. United States v. Pickwick Electric Membership Corp., 158 F. 2d 272 (C.A.6th, 1946); Debs Memorial Radio Fund v. Commissioner, 148 F.2d 948 (C.A.2d, 1945). The taxpayer may be exempt if it is an organization listed under Section 501(c)(4). The government admits that the taxpayer is not organized for profit but contends that the taxpayer is neither a civic organization nor is it operated exclusively for the promotion of civic welfare. All three conditions must prevail to bring the taxpayer within the cited section. Several court decisions attempt to define or describe a civic organization or league. No doubt the most authoritative decision is United States v. Pickwick Electric Membership Corp., supra. The court there, 158 F.2d at page 276, said, " 'Civic' is defined as pertaining to a city or a citizen; relating to the community. A civic league or organization embodies the idea of citizens of a community cooperating to promote the common good and general welfare of people of the community." In the cited case the corporation was organized to provide electricity for communities, rural districts, schools and towns. In Debs Memorial Radio Fund v. Commissioner of Int. Rev., supra, the corporation was organized to conduct a free public radio forum for dissemination of liberal and progressive social views, and the court held that it was a civic organization within the meaning of the applicable section then enforced. A similar principle was pronounced by the court in Hanover Imp. Soc. v. Gagne, 92 F.2d 888 (C.A.1st, 1937), where the association in question operated a motion picture theatre and used the profits therefrom for village improvements.

The government in conceding that the taxpayer is not organized for profit and that it is a charitable organization does not, per se, concede that it is a civic organization. The minutes of the resolutions and actions taken by the Trustees over the years indicate that there can be no finding that taxpayer is a civic organization. Mr. Mack, during his lifetime, borrowed large sums from the trust. The trust made loans to Mr. Mack's daughter. The trust loaned money to a corporation in which the donor had a substantial stock interest. No loans were made to any other persons than to the donor or his daughter or to corporations in which the donor was interested. One can concede that the purpose of the trust generally is charitable but at the same time the trust and its management has been directed towards the perpetuation of E. H. Mack's name as a beneficent individual in the Erie community, and in order to promote that idea, it seems apparent that the donor desired that a $10,000,000.00 trust be accumulated. Mr. Mack desired to leave a magnificent memorial in the way of a charity. However, he did not formulate any specific program nor have the trustees of the taxpayer formulated any such program. They are frank to state that none can be formulated until the $10,000,000.00 goal is reached. Under the circumstances, the taxpayer cannot be held to be exempt under Section 501(c)(4) as a civic organization. This

584

court, by this decision, does not mean to cast any aspersion upon the objectives or management of the Erie Endowment. It is simply a decision going solely to the tax problem. The defendant is entitled to judgment and it will be so ordered.

This opinion is regarded as comprising the findings of fact and conclusions of law.